596 P.2d 26

In the Matter of a Member of the State Bar of Arizona, Roy Lamar COUSER, Respondent.

No. SB–158.

Supreme Court of Arizona, In Banc.

May 30, 1979.

Dee-Dee Samet, Tucson, for the State Bar of Arizona.

Jack J. Rappeport, Tucson, for respondent.

GORDON, Justice:

This is an original proceeding for disciplinary action against attorney Roy Lamar Couser, hereinafter referred to as respondent. The Disciplinary Board of the State Bar of Arizona has recommended to this Court that respondent be suspended from the practice of law for one year. In so doing, the Board accepted and affirmed the findings of fact and the recommendation of the local administrative committee. Respondent has filed an objection to the Disciplinary Board's recommendation. Pursuant to 17A A.R.S., Rules of Supreme Court, rule 36(d), the matter was transmitted to this Court for consideration.

Respondent does not question the findings of fact and admits the allegations against him. He contends, however, that because of his mental and emotional disorders, he lacked the requisite mens rea to commit acts of moral turpitude. He also asserts that the recommended one year suspension is inappropriate. We reject respondent's first contention and find the suspension to be appropriate.

The findings of fact of the local administrative committee indicate that respondent acted as attorney for Socorro Parra de Yipez, the conservator of the guardianship and estate of Jesus Irene Yipez, a minor. The guardianship became necessary as a result of a fifteen thousand dollar settlement of a personal injury claim of Jesus Irene Yipez. The court ordered that the conservator or her counsel, after reimbursing themselves, deposit all remaining funds in a federally insured savings account. The respondent, in violation of the court order, deposited the sum of his own trust account.

The findings of fact also state that from November 28, 1975, through July 30, 1976, the respondent used the funds from the

Yipez guardianship, deposited in his own trust account, for his own personal benefit.[1] In so doing, he overdrew the account. As a result of the respondent's improper and unauthorized expenditures from the trust account, criminal charges were brought against him. He pled guilty and was convicted of two counts of obtaining property or other valuable consideration by false pretense, in violation of A.R.S. § 13–312. Respondent's convictions on the two counts were, however, set aside by court order of the Honorable Richard Roylston.[2]

The findings of fact further indicate that the respondent has made restitution of the funds improperly expended from his trust account[3] and has engaged in pro-bono legal work since his conviction. Additionally, the respondent was suffering from a mental illness before and during the foregoing events, which had a causal relationship to his behavior during that time.

The local administrative committee concluded that it was entitled to consider respondent's misdemeanor convictions, and the acts leading to his convictions, as a basis for disciplinary action even though the convictions had been expunged. The committee also found that the use of a client's trust funds for respondent's personal benefit involved moral turpitude and unprofessional and unethical conduct in violation of the Code of Professional Responsibility, DR 1–102(A)(1), (3), (4), (6); DR 6–101(A)(3); DR 7–106(A), as well as 17A, Arizona Supreme Court Rules, rule 29(b)2 and 3 and 29(c). Finally, the committee found that the respondent's mental and emotional strain, which affected his behavior, should be a factor to be considered in determining an appropriate discipline.

We agree with the local administrative committee that the expungement of respondent's convictions, pursuant to A.R.S. § 13–907, is not a defense to disciplinary proceedings. Respondent's actions violated the disciplinary rules of the Code of Professional Responsibility and rendered him susceptible to discipline. The actions that violated the Disciplinary Rules cannot be expunged.

Most courts have held that a pardon for a criminal offense is not a defense to disbarment. 59 A.L.R.3d 466:

"The reasoning of courts holding a pardon to be no defense to a disbarment has usually been that while a pardon relieves the offender from punishment which the law imposes for the crime, a pardon does not by itself restore the lawyer's character or blot out the fact that the lawyer committed the offense for which he was convicted." 59 A.L.R.3d 466, 469.

See, e. g., Louisiana State Bar Assn. v. Ponder, 263 La. 743, 269 So.2d 228 (1972), cert. dismissed, 411 U.S. 901, 93 S.Ct. 1532, 36 L.Ed.2d 303 (1973); State v. Snyder, 136 Fla. 875, 187 So. 381 (1939); In re Bozarth, 178 Okla. 427, 63 P.2d 726 (1936). We hold that the same reasoning applies to the facts of the instant case.

We reject respondent's contention that his mental illness rendered him incapable of performing acts of moral turpitude. Respondent's psychiatrist testified that respondent had been under a great deal of stress and emotional difficulty and that he reached a breaking point. As a consequence, he acted in a self-destructive manner and attempted to injure his reputation as an attorney. The psychiatrist testified that although respondent knew the difference between right and wrong, his actions

---

1. An examination of the exhibits reveals that in actuality the respondent wrote unauthorized checks on the account from August 15, 1975, to August 13, 1976.

2. The charges to which the defendant pled were treated as misdemeanors, and he was sentenced to six months probation. Upon completion of the probation, his convictions were expunged, pursuant to A.R.S. § 13–907. That statute allows a defendant who has fulfilled the terms of his probation or sentence to apply to the sentencing judge to set aside the judgment of guilt.

3. The record reveals, however, that although respondent made restitution of the misappropriated funds and his own $350 attorney fee, he has never reimbursed his client for the lost interest.

were motivated by these self-destructive urges. The respondent himself testified that at the time he was writing checks on the trust account he knew that his actions were wrong.

■ It is not appropriate to hold the general public to one standard of conduct and then to condone a less stringent standard for determining if a lawyer's mental problems excuse his wrongful acts. Therefore, unless an attorney is found to have been insane under the *M'Naghten* test, his mental disorders will not operate as a bar to disciplinary actions.

■ We do, however, agree with the local administrative committee's conclusion that the respondent's mental and emotional disorders are factors that may be considered in a disciplinary action. In *Glenn v. State Bar of California*, 14 Cal.2d 318, 94 P.2d 43 (1939), an attorney claimed that his conduct was the product of the severe mental, physical and financial strains under which he was working. The California Supreme Court concluded that although the attorney's circumstances would not absolve him from discipline, his actions did not merit the same degree of censure as conduct motivated by deliberate dishonesty or willful neglect.

■ The misappropriation of a client's funds is an offense involving moral turpitude and warrants disbarment in the absence of extenuating circumstances. *In re Freiburghouse*, 52 Cal.2d 514, 342 P.2d 1 (1959); *see Bradpiece v. State Bar of California*, 10 Cal.3d 742, 111 Cal.Rptr. 905, 518 P.2d 337 (1974).

■ Because of the mental and emotional strains under which the respondent was laboring at the time of his acts, we find disbarment to be inappropriate. We hold, however, that suspending the respondent for one year is an appropriate form of discipline that adequately takes into consideration the factors involved in the respondent's case.

The respondent's psychiatrist and probation officer both testified that, although the respondent was still receiving treatment, they believed that further criminal actions would not occur. They reasoned that the respondent's emotional and financial pressures have been removed and that he has learned to recognize his mental problems and to seek professional help when it is needed. His psychiatrist also testified that he expected to continue to treat the respondent until both he and respondent agree that the latter no longer has serious problems. The psychiatrist estimated that such treatment would probably continue for another year. Both the psychiatrist and the probation officer were of the opinion that punishing the respondent further would be of no avail and might, in fact, have a detrimental effect upon his progress.

■ The objective of disciplinary proceedings, however, is not to punish the offender, but to protect the public, the profession and the administration of justice. *In re Kastensmith*, 101 Ariz. 291, 419 P.2d 75 (1966). We, therefore, reject respondent's contention that further discipline is inappropriate. The recommended suspension is particularly appropriate considering the pending course of psychiatric treatment.

It is ordered that respondent pay to the estate of Jesus Irene Yipez the sum of $617.50, which is the interest that would have accrued over a one year period if the $12,350 had been placed in a federally insured banking or savings institution, as was ordered by the Superior Court.[4] It is further ordered that the respondent be suspended from the practice of law for a period of one year, commencing fifteen days from the date of the mandate or order in

---

4. During the period when respondent was writing checks on the trust account, 5% simple interest was the rate of interest that Great Western Bank was paying on savings accounts. Great Western is the bank in which respondent eventually deposited the funds. The $12,350 figure is obtained by subtracting from $15,000 respondent's $350 attorney fee, a $500 fee to the conservator and $1,800 that was paid to the conservator, over the course of the year, for expenses in taking care of Jesus Irene Yipez. These expenses were all properly paid out of the original $15,000.

this matter. It is also ordered that he comply with the provisions of 17A A.R.S., Rules of Supreme Court, rule 37(h) and promptly notify his clients of his suspension. Additionally, costs incurred by the State Bar of Arizona in prosecuting this matter, in the amount of $522.50, are hereby assessed against respondent pursuant to 17A A.R.S., Rules of the Supreme Court, rule 37(g).

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.