883 P.2d 458

**Noel B. JORDAN, as Special Administrator of the Estate of Ralph B. Burgbacher, Jr., Deceased and not individually, Plaintiff–Appellant,**

**v.**

**Susan BURGBACHER, a single woman, Valley National Bank, a national banking association, and First Interstate Bank, N.A., a national banking association, Defendants–Appellees.**

**No. 1 CA–CV 92–0106.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 13, 1994.

---

Treon, Strick, Lucia & Aguirre by Michael P. Stark and Scott F. Frerichs, Phoenix, for plaintiff-appellant.

Beus, Gilbert & Morrill by J. Tyrrell Taber and M. Scott McCoy, Phoenix, for defendants-appellees.

## OPINION

WILLIAM J. O'NEIL, Superior Court Judge.[1]

The special administrator of the estate of Ralph B. Burgbacher, Jr., appeals from a judgment awarding decedent's widow, appellee Susan Burgbacher, the proceeds of three payable on death (POD) bank certificates of deposit (CDs), which had been the separate property of the decedent. The appeal raises the following questions:

(1) Whether the trial court erred in concluding as a matter of law that appellee was the POD payee on each of decedent's separate property CDs; and

(2) Whether the trial court erred in concluding appellee retained her expectancy interest as POD payee on decedent's CDs despite entering into a property settlement agreement with decedent.

We have jurisdiction pursuant to Ariz.Rev. Stat.Ann. ("A.R.S.") section 12–2101(B).

### FACTS AND PROCEDURE BELOW

On October 19, 1989, Ralph Burgbacher, Jr. (decedent) and Susan Burgbacher entered into a property settlement agreement resolving a pending legal separation action. The parties legally separated on December 20, 1989.

Decedent died April 29, 1990. Appellant Noel B. Jordan, decedent's sister, was appointed personal representative of his estate. At his death, decedent owned various CDs. Three of these CDs were deposited with First Interstate Bank, Security Pacific (formerly Arizona) Bank, and Valley National Bank. These three investments were his separate property.

Susan Burgbacher claimed entitlement to the proceeds of these CDs as POD payee. The face value of the Security Pacific CD was paid to her with interest. On June 8, 1990, appellant brought this action seeking a legal determination that Ms. Burgbacher had no interest in any of the CDs and for a return of the funds paid to her. Appellant sought a declaration that Ms. Burgbacher was not the POD payee on the CDs, and in any event, had given up any claim as POD payee by entering into the property settle-ment agreement. Both parties filed motions for summary judgment.

### FIRST INTERSTATE BANK CD

On October 21, 1987, a CD account was opened at First Interstate Bank. The signature card for the account lists Susan L. Burgbacher as the sole POD payee. The records reflect three additional CDs were opened on subsequent dates. All CDs bore an identical customer account number and were listed on the signature card of October 21, 1987. However, on October 10, 1989, decedent obtained a new $150,000 CD. Unlike the previous deposits, this $150,000 CD was not recorded on the signature card.

On January 8, 1990, decedent obtained a $100,000 CD with the same "customer account number." Like the $150,000 CD, this CD was not recorded on the signature card.

After decedent and appellee separated, decedent went to First Interstate Bank. He informed an employee that his wife and he were separated and asked to see his signature card. The employee went over the front and back of the card with him and pointed out that his wife was listed as the POD payee. She inquired if he wished to change the designation and he replied, "No, that's fine."

### SECURITY PACIFIC (ARIZONA) BANK CDs

On November 20, 1987, decedent executed a signature card for an account at the Arizona Bank entitled, "Ralph G. Burgbacher, Jr. POD Susan L. Burgbacher." On this signature card were recorded a series of $100,000 CDs, each with separate "account numbers," opened on dates ranging from 1987 through May 12, 1989. The $100,000 CD which was opened on May 12, 1989, to which account number 010109501 was assigned, is the second subject of this litigation.

An employee of Security Pacific Bank, The Arizona Bank's successor, testified that an account holder would be required to sign a new signature card in order to remove the POD beneficiary. It is undisputed that decedent never signed a new signature card.

1. The Honorable William J. O'Neil, Judge of the Superior Court of Pinal County, was authorized by the Chief Justice to participate in this appeal pursuant to Ariz. Const. art. VI, § 3.

However, in the trial court, appellant produced a letter of April 10, 1990, addressed to Security Pacific Bank and allegedly signed by decedent. The letter purported to confirm a telephone request of April 9, 1990, that Susan L. Burgbacher's name be removed from decedent's account. The employee to whom the letter was addressed did not remember receiving it. Security Pacific's records contained neither the original nor a copy of the letter.

The Security Pacific Bank statements for this account over the period of January 1 through March 31, 1990, identified appellee as the POD payee. Statements issued for the same account for March 31 through May 25, 1990, named no POD payee. A bank employee testified that a POD account statement could be issued without the payee's name only if the account holder ordered a change deleting the payee. Ultimately, proceeds from this deposit with interest were disbursed to Susan Burgbacher through her attorney.

The trial court found:

There is no authentication of the alleged letter from Ralph Burgbacher. While Noel Jordan may feel she recognizes the deceased brother's signature, her [testimony] is suspect. Merely comparing the signature shown on the letter and Ralph Burgbacher's signature shown on Plaintiff's other exhibits demonstrates serious doubts as to its authenticity.

However, the evidence does show that the signature card signed by Ralph at Security Pacific does designate Susan as POD payee.... The best evidence of whether Susan Burgbacher was the POD beneficiary on Ralph's account at Security Pacific is that Susan Burgbacher was paid the proceeds of that account on Ralph's death. It goes undisputed by the stipulated facts that Security Pacific paid the $100,000 CD benefits to Susan. Assuming that Security Pacific handles many of these important matters daily, it seems unlikely that they would turn over $100,000 to a POD beneficiary if a genuine concern over that designation was at issue.

## VALLEY NATIONAL BANK CD

Decedent opened a $95,000 CD at Valley National Bank on January 31, 1989. As with the other deposits discussed, his signature card identified the designated POD payee as Susan L. Burgbacher. On November 13, 1989, decedent was issued a new $100,000 CD. The sole documentation of this deposit is a computer generated "CDT Balance Inquiry" that refers to the same original account number but names only the decedent. This CD was not recorded on the Valley National Bank signature card.

In ruling in favor of appellee, the trial court stated:

Since Ralph had opened CDs in the past, and assuming he understood the significance of a POD beneficiary, it would seem that he understood the original signature card as governing his present and subsequent CDs with VNB. At the very least, when Ralph did open a new CD, he should reasonably have expected someone would ask him to sign a new signature card. If they did not, this would put a reasonable individual in a position to inquire why. If Ralph did ask this question and express a wish for a new POD beneficiary, there is no doubt VNB would have accommodated him.

## PROPERTY SETTLEMENT AGREEMENT

The Burgbachers' agreement recited "the parties' desire to effect a permanent settlement of their respective property rights and to settle all rights, claims and obligations arising out of the marital relation." The agreement provided in part:

II. Division of Property

It is the intention of the parties to effectuate, through this Agreement, an equal division, by value, of certain community and other property held in common, referred to herein as follows:

. . . .

E. Except as otherwise may be provided herein, all the earnings, income or accumulations of either party from and after the date of this Agreement, and all property in any manner acquired after said date

by either party shall be and remain the sole and separate property of the party so earning, receiving, accumulating or acquiring the same. Each of the parties hereto does relinquish, waive and quit claim in favor of the other party any right or claims of any kind or character whatsoever to such earnings, income accumulations and property.

. . . .

VII. Waiver

Except as set forth herein, each party releases and relinquishes any and all claims and rights that he or she may have against the other party arising out of the marriage relationship, and further releases and relinquishes any and all claims and rights that he or she may have or hereafter acquire to share in any capacity or to any extent whatsoever in the estate of the other, whether by way of statutory allowance or distribution in intestacy or election to take against or under the other party's Last Will and Testament or otherwise; and to act as personal representative of the other party's estate or to act in regard to the probate of the other party's Last Will and Testament in any manner whatsoever.

In rejecting appellant's contention that Ms. Burgbacher had given up any claim as POD payee under any of the CDs by entering into the property settlement agreement, the trial court ruled:

[A] reading of the settlement agreement in its entirety does not disclose any reference to a waiver of any contingent interests. The release is limited to any share that Susan may have had in the estate of Ralph. The POD accounts are not part of Ralph's estate. Hence, while Susan may have waived any rights she may have had to any estate asset, this has no bearing on whether she is entitled to be the designated beneficiary of a POD account.

. . . .

. . . Susan Burgbacher possessed no right in the CDs during Ralph's life. She merely held a contingent expectancy interest in the event of Ralph's death. Hence, since she had nothing to waive and Ralph did not change the beneficiary on the contracts (something he was free to do), the POD beneficiary provisions must be honored.

Summary judgment was entered in favor of appellee on all issues.

Appellant moved for reconsideration. The trial court denied the motion, finding "there is a failure of proof by Plaintiff necessary to establish a triable issue." The trial court entered judgment and appellant timely appealed.

## ANALYSIS

### Standard of Review

On appeal from summary judgment, we consider whether there exist genuine issues of material fact and whether the trial court correctly applied the substantive law. *Long v. Buckley*, 129 Ariz. 141, 142, 629 P.2d 557, 558 (App.1981). No genuine issue of material fact exists if the facts produced to support a claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense. *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

Contract interpretation is a matter of law, which we review *de novo*. *Phillips v. Flowing Wells Unified School District No. 8*, 137 Ariz. 192, 194, 669 P.2d 969, 971 (App. 1983).

### Was Ms. Burgbacher the POD Payee on Decedent's CDs?

In Arizona, the rights of persons in POD accounts are governed by Arizona Revised Statutes Title 14, Chapter 6, Article 1, "Multiple-party Accounts," and Article 2, "Provisions Relating to Effect of Death." A.R.S. §§ 14–6101 through 14–6114; 14–6201. Multiple-party accounts include joint accounts, POD accounts and trust accounts.[2]

---

2. A.R.S. § 14–6101 provides in part:

1. 'Account' means a contract of deposit of funds between a depositor and a financial in-

A.R.S. § 14–6101(5). A POD account belongs to the original depositor during that person's lifetime and not to the POD payee or payees. A.R.S. § 14–6103(B). Arizona Revised Statutes Annotated section 14–6104(B) provides in part:

"If the account is a POD account, on death of the original payee or of the survivor of two or more original payees, any sums remaining on deposit belong to the POD payee or payees if surviving, or to the survivor of them if one or more die before the original payee."

Additionally, A.R.S. section 14–6106 provides:

"Any transfers resulting from the application of § 14–6104 are effective by reason of the account contracts involved in this article and are not to be considered as testamentary or subject to Chapters 2 through 4 of this title."

These governing statutes determine whether Ms. Burgbacher was POD payee of decedent's accounts. Ms. Burgbacher is the payee for each account if she was designated in the contract of deposit of funds between decedent and the depository bank as the person to whom the account was payable on request after his death. As a result, an examination of the various contracts of deposit evidenced in the record resolves this issue.

### FIRST INTERSTATE BANK CD

Appellant contends the documentary record was too flimsy to allow the trial court to conclude that Ms. Burgbacher was the POD payee on the $100,000 First Interstate Bank CD. We do not agree. First, though neither the $150,000 CD nor the $100,000 CD was noted on the signature card for decedent's account no. 1559–20343, both CDs themselves bore that number. This number did not merely identify decedent as a customer of the bank—it was one of two numbers designating the contractual agreement which formed the basis for the accounts decedent had at First Interstate Bank.

Additionally, a First Interstate Bank employee testified that when decedent obtained the $150,000 CD, he stated that Ms. Burgbacher and he had become separated and asked to see the signature card. Decedent was shown that signature card and declined to change the POD payee designation. Appellant offered no evidence that appellee was not the POD payee on the First Interstate Bank CD or that decedent took any action to change that designation.

### THE SECURITY PACIFIC CD

The parties do not dispute Ms. Burgbacher's status as POD payee on this account. Appellant contends that there was sufficient evidence presented in opposition to Ms. Burgbacher's cross-motion for summary judgment to raise a triable fact issue on the question whether decedent directed the bank to remove Ms. Burgbacher as POD payee before his death.

Appellant calls our attention to A.R.S. section 14–6105, which provides:

Prior to death of a party, the form of an account may be altered by written order to change the form or to stop or vary payment under the terms of the account. The order must be signed by a party, received by the financial institution prior to the death, and not countermanded by other written order of the same party prior to the death. At the death of a party, rights of survivorship under section 14–6104 are determined by the form of the account at that time.

Appellant argues that the April 10, 1992, letter requesting the removal of Ms. Burgbacher's name from the account, operated to delete her payee designation from the account. Appellant bolsters his contention by

---

stitution, and includes a checking account, savings account, certificate of deposit, share account and other like arrangement.

. . . .

10. 'POD account' means an account payable on request to one person during lifetime and on his death to one or more POD payees, or to one or more persons during their lifetimes and on the death of all of them to one or more POD payees.

11. 'POD payee' means a person designated on a POD account as one to whom the account is payable on request after the death of one or more persons.

12. 'Request' means a proper request for withdrawal, or a check or order for payment, which complies with all conditions of the account, including special requirements concerning necessary signatures and regulations of the financial institution. . . .

pointing out that (1) the account statement for the period March 31 through May 25, 1990, omitted Ms. Burgbacher's name as POD payee for the first time, and (2) an employee of Security Pacific Bank testified that a statement omitting a POD payee could be issued only if the customer had ordered the POD payee deleted. Appellant urges these facts constituted sufficient evidence from which a jury could find that Security Pacific Bank had received decedent's change request.

We disagree. The question whether the account holder intended or attempted to communicate an account change order to the bank is not material under A.R.S. section 14–6105. It is the receipt of the written order by the bank that is material. The evidence on which appellant relies, when considered in context, had so little probative value that reasonable people could not conclude by a preponderance of the evidence that Security Pacific had actually received decedent's written instruction. Appellant produced no evidence that decedent ever mailed the original of the letter, or that Security Pacific Bank responded in writing as the letter requested. Security Pacific's records did not include either the original or a copy of decedent's letter. Further, as the trial court noted, Security Pacific paid the proceeds of the CD directly to Ms. Burgbacher after decedent's death. Appellant does not attempt to explain why the bank would have done so if its records had included a written request by the decedent to terminate the POD payee designation.

As Security Pacific's employee testified, the bank can remove the POD payee directly from the bank's computer system. Accordingly, Ms. Burgbacher's name could have been removed from the account record on the bank's computer pursuant to a telephone request of the kind decedent's letter purported to confirm. This could explain the bank statements. However, under A.R.S. section 14–6105, that action would have been legally insufficient to remove Ms. Burgbacher as POD payee. Like the other evidence on which appellant relies, the fact that Security Pacific issued a final account statement that did not list Ms. Burgbacher as POD payee did not amount to evidence on which a rea-

sonable jury could conclude that the bank actually received the required written change order.

### VALLEY NATIONAL BANK CD

Decedent opened account no. 8887–5599 at Valley National Bank on January 31, 1989. He made an initial deposit of $95,000 in a time certificate of deposit. The signature card referred to number "T5127287" and designated Ms. Burgbacher as POD payee on the account.

On May 4, 1990, Valley National Bank generated a computer "CDT Balance Inquiry." This document referred to "CDT: 286–8887–5599" (emphasis added) and "Certificate Number: **T005127287**." (Emphasis added.) It reflected a current balance of $100,000 an issue date of November 13, 1989, a renewal date of February 12, 1990, and a maturity date of May 14, 1990.

Based on this evidence, a reasonable person could only conclude that the $100,000 Valley National Bank CD balance outstanding at decedent's death was governed by the terms of the signature card, which reflected the same account number and certificate number.

### DID MS. BURGBACHER RETAIN HER EXPECTANCY INTEREST AS POD PAYEE ON DECEDENT'S CDS DESPITE HER ENTERING INTO A PROPERTY SETTLEMENT AGREEMENT?

■ Appellant contends that by signing the property settlement agreement with decedent, Ms. Burgbacher waived any right to receive the proceeds of decedent's three CDs as his POD payee. We disagree. The operative language of the property settlement agreement did not affect Ms. Burgbacher's expectancies as POD payee under decedent's CDs. Her expectancy in each CD was not a right, claim or obligation "arising out of the marital relation" which the parties expressly intended to settle. Neither did decedent's three CDs constitute "community" or other property held in common" which the parties sought expressly to divide pursuant to section II of the agreement. By the terms of A.R.S. section 14–6103(B), the decedent owned the POD accounts outright during his lifetime. The parties' agreement that each

would retain ownership, use and control of all financial accounts in their names therefore conferred no additional rights on decedent. Additionally, the parties agreed their joint warranties and representations about their assets would not apply to the decedent's sole and separate property, of which the three CDs indisputably formed a part.

Finally, contrary to appellant's contention, the proceeds of the decedent's CDs were not part of his "estate" within the meaning of the agreement's waiver provision. All six specific enumerations after the term "estate" in that clause plainly refer to the decedent's probate estate or its administration. *See* A.R.S. §§ 14–2401 through 14–2403 (allowance in lieu of homestead, exempt property and family allowance); A.R.S. §§ 14–2101 and 2102 (intestate share of surviving spouse); A.R.S. § 14–2301 (omitted spouse); A.R.S. §§ 14–2501 to 2612 (wills and construction of wills); A.R.S. § 14–2801 (renunciation of succession); A.R.S. § 14–3101 (probate of wills and estate administration).

■ The rights of a POD payee do not arise as a result of an "estate" but rather from a contract of deposit. A.R.S. § 14–6104(B). Payment of such proceeds is neither testamentary nor subject to the statutory provisions on decedent's estates. A.R.S. § 14–6106. Appellee's expectancy as POD payee was not a claim or right to share in decedent's "estate" within the meaning of the property settlement agreement. The agreement therefore did not waive Ms. Burgbacher's expectancy.

The Arizona decisions on which appellant relies are also inapposite. Most of those cases concerned joint bank accounts, which do not further the analysis of the disposition of a POD account, a considerably different device. *Compare* A.R.S. § 14–6103(A) *with* (B); A.R.S. § 14–6104(A) *with* (B).

The trial court correctly held decedent and Ms. Burgbacher's property settlement agreement did not waive her expectancy as POD payee under decedent's CDs. The property settlement agreement and waiver language were not broad enough to extinguish appellee's rights.

### APPELLEE'S REQUEST FOR ATTORNEY'S FEES ON APPEAL

■ Ms. Burgbacher requests an award of attorney's fees on appeal pursuant to the property settlement agreement,[3] or in the alternative, pursuant to A.R.S. section 12–341.01(A).[4] In response, appellant argues the attorney's fees provision in the property settlement agreement does not apply to Ms. Burgbacher. She further contends A.R.S. section 12–341.01(A) is unavailable to Ms. Burgbacher because she and decedent expressly agreed to the exclusive conditions under which attorney's fees might be recovered.

Appellant relies on the following language from *Connor v. Cal–Az Properties, Inc.:*

Where "parties have provided in the contract the conditions under which attorney's fees may be recovered," A.R.S. § 12–341.01 is not to be considered. *Sweis v. Chatwin,* 120 Ariz. 249, 252, 585 P.2d 269, 272 (Ct.App.1978).

137 Ariz. 53, 55, 668 P.2d 896, 898 (App.1983). Contrary to this broad statement in *Connor,* however, *Sweis v. Chatwin* did not so broadly hold. There, the contract granted the successful party the unconditional right to recover reasonable attorney's fees. Rejecting the

---

3. Section XIII of the property settlement agreement provides:

In the event it is necessary that either party petition the Court for enforcement of this Agreement, the party failing to perform shall be liable to the party seeking the enforcement for the reasonable attorney's fees and costs incurred, as may be determined by the Court.

4. A.R.S. § 12–341.01 provides in part:

A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees.

B. The award of reasonable attorney's fees awarded pursuant to subsection A should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney's fees actually paid or contracted, but such award may not exceed the amount paid or agreed to be paid.

contention that A.R.S. section 12–341.01 could be applied to characterize attorney's fees as "costs" for purposes of requiring security for costs under Rule 67(d), Arizona Rules of Civil Procedure, we stated:

> While it is true that A.R.S. § 12–341.01 now gives the trial judge the discretion to award attorney's fees to the successful party in contested actions arising out of contract, it is our opinion that the statute is inapplicable to the litigation here involved, inasmuch as the parties have provided in their contract the conditions under which attorney's fees may be recovered. Section 12–341.01(A), in plain and unambiguous language provides that this statute "shall in no manner be construed as altering, prohibiting or restricting present or future contracts ... That may provide for attorney's fees." **If section 12–341.01 were to be held applicable to this litigation, it would in effect cancel the unqualified contractual right to recover attorney's fees given to the successful party by their agreement, and substitute in its place the purely discretionary or permissive right given by the statute. This would clearly be an alteration of the agreement of the parties and for that reason, we find that section 12–341.01 is not applicable here.**

120 Ariz. at 252, 585 P.2d at 272 (emphasis added). *Sweis v. Chatwin* did not hold that any express contractual provision for attorney's fees, however worded, "preempts" A.R.S. section 12–341.01. That case merely recognized that A.R.S. section 12–341.01 is inapplicable by its terms if it effectively conflicts with an express contractual provision governing recovery of attorney's fees.[5] We disagree with a reading of *Connor v. Cal–Az Properties, Inc.* that would interpret *Sweis v. Chatwin* more broadly.

The property settlement agreement does no more than confer the right to recover reasonable attorney's fees and costs against the party in breach of the agreement. It is not inconsistent with recovery of attorney's fees on other legal bases. A.R.S. section 12–341.01 accordingly applies to Ms. Burgbacher's request for attorney's fees on appeal.

This litigation arose out of the property settlement agreement and out of the contracts of deposit between decedent and the three banks. We grant Ms. Burgbacher's request for attorney's fees pursuant to A.R.S. section 12–341.01. She may establish the amount of her award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Affirmed.

VOSS, P.J., and McGREGOR, J., concur.

---

**5.** We followed a similar analysis in *Pioneer Roofing Co. v. Mardian Const. Co.*, 152 Ariz. 455, 733 P.2d 652 (App.1986):

> The court will not infer a prohibition against the recovery of attorney's fees to one party under § 12–341.01 simply because a contract contains a unilateral attorney's fees provision favorable to another party. Where a contract has a unilateral provision permitting one party to recover attorney's fees under certain circumstances, § 12–341.01(A) requires that the contract provision be applied when the party seeking recovery of fees is the one allowed recovery under the unilateral contract provision. *Sweis.* Where the same contract lacks a provision regarding the other parties' rights, or denial of rights, to an award of attorney's fees, § 12–341.01 applies.

152 Ariz. at 471, 733 P.2d at 668.