974 P.2d 443

**Stephen T. RUSSELL, a single person, Plaintiff–Appellant,**

v.

**ROYAL MACCABEES LIFE INSURANCE COMPANY, a Michigan corporation; Doug Dombey, Defendants–Appellees.**

**No. 1 CA–CV 97–0157.**

Court of Appeals of Arizona, Division 1, Department B.

May 7, 1998.

Review Denied March 31, 1999.

---

Frederick C. Berry, Jr., P.C. by Frederick C. Berry, Jr., Phoenix, and Hofmann, Salcito & Stevens by Leroy W. Hofmann, Phoenix, for Plaintiff–Appellant.

Brad K. Keogh, Phoenix, for Defendants–Appellees.

OPINION

PATTERSON, Judge.

¶ 1 Stephen T. Russell (appellant) appeals from summary judgment permitting Royal Maccabees Life Insurance Company (Royal) to rescind appellant's disability insurance policy because of an alleged misrepresentation in the policy application. Finding a genuine issue of material fact, we reverse and remand.

## I. *FACTS AND PROCEDURAL HISTORY*

¶ 2 We state the facts in a light most favorable to appellant. *Griffith v. Faltz*, 162 Ariz. 599, 599, 785 P.2d 119, 119 (App.1990). In July 1980, appellant was arrested and charged with felony insurance fraud and felony theft. As a result of pleading guilty to the felony theft charge, the insurance fraud charge was dismissed. On March 31, 1981, the court sentenced appellant to four years probation. Approximately seven months later, appellant's probation officer recommended early termination of his probation, which the trial court granted, subsequently entering an order discharging appellant from probation.

¶ 3 In February 1982, on motion from appellant, the trial court issued an administrative order pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 13–907, vacating judgment of guilt, dismissing charges, and restoring appellant's civil rights. Appellant's attorney subsequently advised him that he could respond to inquiries into his criminal background, such as whether he had ever been convicted of a felony, in the negative. Since that time, appellant consistently answered "no" to such questions.

¶ 4 On May 14, 1992, appellant submitted to Royal an application for a disability buy-out insurance policy (the policy). Question 23(f) on the application asked: "Has the Proposed Insured(s) in Question 1 ever been convicted of a felony?" Appellant answered in the negative. Royal issued the policy to appellant on June 14, 1992.

¶ 5 Appellant was injured in an accident on March 7, 1994 and, as a result, underwent physical therapy. The physical therapy did not alleviate appellant's pain, therefore, on June 30, 1994, his physician placed him on total disability. Appellant subsequently filed a disability claim under his policy. Royal denied the claim on the grounds that he was not disabled. Appellant brought suit on June 20, 1995, to enforce coverage. On October 31, 1995, following an investigation into appellant's background, Royal moved to file an amended answer and counterclaim to assert rescission as an affirmative defense because of the newly discovered conviction. The trial court granted Royal's motion.

¶ 6 In February 1996, Royal moved for summary judgment on the grounds of rescission. Appellant cross-moved for summary judgment. By a minute entry order, the trial court granted Royal's motion for summary judgment and denied appellant's cross-motion. After hearing oral arguments and considering motions for attorneys' fees from both parties, the court ruled in favor of Royal, granting $1,577.66 in costs and $25,000 in attorneys' fees pursuant to A.R.S. section 12-341.01 (1992).

¶ 7 In January 1997, the trial court entered its final judgment against appellant. This timely appeal followed. We have jurisdiction pursuant to A.R.S. sections 12-120.21 (1992) and 12-2101(B) (1994).

## II. STANDARD OF REVIEW

¶ 8 We must determine whether genuine issues of material fact exist and whether the trial court correctly applied the substantive law. Jordan v. Burgbacher, 180 Ariz. 221, 225, 883 P.2d 458, 462 (App.1994). We will find summary judgment appropriate where the non-moving party has presented so little evidence in support of the claim or defense

advanced, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by that party. Orme School v. Reeves, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

## III. DISCUSSION

### A. The Incontestability Period of the Policy

¶ 9 Pursuant to A.R.S. section 20-1346(A)(a) (1990), every disability insurance contract requires the following provision:

Time limit on certain defenses: (a) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two year period.

¶ 10 Appellant argues on appeal that the trial court erred in interpreting A.R.S. section 20-1346 as permitting an insurer to rescind an insurance policy for reasons other than intentional fraudulent misrepresentation after the two-year incontestability period of the policy has expired. Appellant is essentially arguing that the two year time limit for contesting insurance policies refers to the date the insurer raises the misstatement defense and that because Royal did not raise the defense until after the two year time limit had expired, Royal must now prove appellant made a fraudulent misstatement. Appellant's argument is flawed.

■ ¶ 11 While it is true that two years had elapsed from the date of issuance to the date Royal first raised its fraudulent misrepresentation claim, appellant misconstrues the effect of the second half of the statute: "for loss incurred or disability . . . commencing after the expiration of such two year period." Id. Under section 20-1346, this language means an insurer can only void an insurance policy or deny a claim for loss incurred or disability originating two years from the date of issuance of the policy if the insurer proves that the applicant made a fraudulent misstatement in the application for the insurance policy. The language of the statute is

plain and unambiguous. Therefore, our duty is simply to apply the language to the case at hand. *Chaparral Dev. v. RMED Int'l, Inc.*, 170 Ariz. 309, 311, 823 P.2d 1317, 1319 (App. 1991).

■ ¶ 12 As Royal points out in its answering brief, appellant's argument ignores the dispositive clause of the statute—that his disability must commence *after* the expiration of the two year period. He also ignores the dispositive provisions of the policy itself:

We rely on the statements made in the application. But after two years from the Policy Effective Date, no misstatements, except fraudulent misstatements, in the application may be used by Us to void the Policy or deny any claim *for loss incurred or Disability that begins after the end of the two year period.*

(Emphasis added.) Appellant's insurance contract was issued on June 14, 1992. His total disability commenced on March 7, 1994.[1] Because appellant's disability originated more than three months shy of the two year requirement under the statute, the statutory and policy incontestability provisions are inapplicable as a matter of law. Accordingly, Royal did not have to show a fraudulent misstatement to assert the affirmative defense of rescission of the policy under A.R.S. section 20–1109 (1990).

## B. Effect of Vacated Conviction under A.R.S. section 13–907.

¶ 13 Appellant first argues that he did not make a misrepresentation at all. He argues that because his prior conviction was vacated pursuant to A.R.S. section 13–907, legally no conviction ever existed. Therefore, his negative response to the inquiry about felony convictions was not a misstatement. We disagree.

¶ 14 Section 13–907 provides, in relevant part:

A. Except as provided in subsection B of this section, every person convicted of a criminal offense may, upon fulfillment of the conditions of probation or sentence and discharge by the court ... have the judgment of guilt set aside.... If the [court] grants the application, the [court] shall set aside the judgment of guilt, dismiss the accusations or information and order that the person be released from all penalties and disabilities resulting from the conviction other than those imposed by the department of transportation pursuant to § 28–3304, 28–3306, 28–3307 or 28–3308, *except that the conviction may be used as a conviction if [it] would be admissible had it not been set aside and may be pleaded and proved in any subsequent prosecution of such person by the state ... or used by the department of transportation in enforcing the provisions of § 28–3304, 28–3306, 28–3307, 28–3308 as if the judgment of guilt had not been set aside.*

(Emphasis added).

■ ¶ 15 The statute itself is proof that restoration of civil rights under section 13–907 does not expunge[2] or remove the *fact* of conviction in Arizona. The statute allows an

---

1. Appellant admitted to the trial court in his superseding response and cross-motion for summary judgment that "he has consistently and accurately maintained that he became totally disabled on the date of the accident, March 7, 1994." Further, the trial court ruled as a matter of law that the two year elimination period for appellant's breach of contract claim began accruing March 7, 1994, the date of appellant's total disability.

2. To "expunge" means "[t]o destroy; blot out; obliterate; erase; efface designedly; strike out wholly. The act of physically destroying information-including criminal records-in files, computers, or other depositories." BLACK'S LAW DICTIONARY 582 (6th ed.1990). "Expungement" refers to the process by which the record of a criminal conviction is physically destroyed after a period of time. *Id.*

In the definitional sense, "expungement" inaccurately describes the effect of section 13–907, which does not literally "erase" or "physically destroy" the conviction. We do not use "expungement" in its definitional sense but in a more general sense in accord with the statute, case law and Attorney General opinion interpretations.

Further, the order vacating judgment of guilt also provides for the dismissal of charges. We do not read this to encompass discretion or authority of the court outside that enunciated in the statute, which describes dismissing the accusations or information. Again, a strict definitional sense of "dismiss"—"to dispose of" ... "permanently"—inaccurately describes the effect of section 13–907. BLACK'S, supra, at 469.

otherwise admissible prior conviction to be used for subsequent prosecutions as if the judgment of guilt had not been set aside. A.R.S. § 13–907(A).

¶ 16 The Arizona Supreme Court addressed the effect of an order issued pursuant to section 13–907 in *In re Couser*, 122 Ariz. 500, 596 P.2d 26 (1979). The *Couser* case involved disciplinary proceedings against an attorney. The attorney had pled guilty to and was convicted of two counts of obtaining property or other valuable consideration by false pretense, a violation of A.R.S. section 13–312. *Id.* at 501, 596 P.2d at 27. His convictions were later expunged pursuant to section 13–907. *Id.* at 501 n. 2, 596 P.2d at 27 n. 2. However, the local administrative committee determined that despite expungement of his prior convictions, the committee was entitled to consider them as bases for disciplinary action. The Arizona Supreme Court agreed, concluding that section 13–907 is not a defense to disciplinary proceedings. "The actions that violated the Disciplinary Rules cannot be expunged." *Id.* at 501, 596 P.2d at 27. In explaining its decision, the court stated that:

> Most courts have held that a pardon for a criminal offense is not a defense to a disbarment. "The reasoning of courts holding a pardon to be no defense to a disbarment has usually been that while a pardon relieves the offender from punishment which the law imposes for the crime, *a pardon does not* by itself restore the lawyer's character or *blot out the fact that the lawyer committed the offense for which he was convicted.*" We hold that the same reasoning applies to the facts of the instant case.

*Id.* (emphasis added) (citations omitted). *See also* Op. Atty. Gen. Nos. I83–042 (1983) ("The language of A.R.S. § 13–907 itself shows that expungement does not destroy the fact of conviction."); I89–082 (1989) ("[A] court order using either the term 'expunge' or the term 'set aside' does not require the actual obliteration of the fact of conviction from ... public ... records.").

¶ 17 The precise issue presented here—whether section 13–907 permits non-disclosure of a conviction set aside under that section in response to a direct question about such conviction—is, however, one of first impression in Arizona. Therefore, we look to outside authority for guidance.

¶ 18 California has a statute similar to A.R.S. section 13–907, which provides in relevant part:

> (a) In any case in which a defendant has fulfilled the conditions of probation ..., or has been discharged prior to the termination of the period of probation ... the defendant shall ... be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty ... and ... he or she shall thereafter be released from all penalties and disabilities resulting from the ... convict[ion], except as provided in Section 13555 of the Vehicle Code.... *[H]owever, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed.* The order shall state, and the probationer shall be informed, that the order *does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery.*

Cal.Penal Code § 1203.4(a) (Supp.1997) (emphasis added).

¶ 19 Since the enactment of California's statute, the courts and legislature "have progressively reduced the class of penalties from which the offender is released, while expanding the class of people to whom expungement applies." Abby Soven, Comment, *The* Effect of Expungement on a Criminal Conviction, 40 S. Cal. L.Rev. 127, 133 (1967). "Where the courts have broadly construed section 1203.4, the legislature has responded by amending the statute to nullify the effect of the court's interpretation, and where the courts have narrowly construed the section, the legislature has responded by codifying the narrow construction." *Id.* at 133–34 (citations omitted).

¶ 20 As early as 1941, the Supreme Court of California addressed the effects of section 1203.4 in *In re Phillips,* 17 Cal.2d 55, 109 P.2d 344 (1941). That case, like *Couser,* involved disciplinary action against an attorney. The court in *Phillips* addressed the question of whether expungement of a crime involving moral turpitude operated to suspend disbarment for that crime. The court concluded:

> The power of the court to reward a convicted defendant who satisfactorily completes his period of probation by setting aside the verdict and dismissing the action operates to mitigate his punishment by restoring certain rights and removing certain disabilities. *But it cannot be assumed that the legislature intended that such action by the trial court under section 1203.4 should be considered as obliterating the fact that the defendant had been finally adjudged guilty of a crime.* This is made clear by the provision that ... the defendant's conviction can be used against him in any later prosecution, despite dismissal of the action under section 1203.4. In brief, action in mitigation of the defendant's punishment should not affect the fact that his guilt has been finally determined according to law. Such a final determination of guilt is the basis for the order of disbarment in this case. *That final judgment of conviction is a fact; and its effect cannot be nullified for the purpose here involved, either by the order of probation or by the later order dismissing the action after judgment.*

*Id.* 109 P.2d at 347–48 (emphasis added). Thus, the result in *Phillips* is the same as the result in *Couser*—an expunged conviction can be used as a basis for disciplinary proceedings against an attorney. More importantly, the court's reasoning in *Phillips* is closely analogous to our supreme court's reasoning in *Couser. See id.; Couser,* 122 Ariz. at 501, 596 P.2d at 27.

¶ 21 Cases since *Phillips* have consistently upheld denial of a license or preclusion from a professional occupation on the basis of an expunged conviction. *See Adams v. County of Sacramento,* 235 Cal.App.3d 872, 1 Cal.Rptr.2d 138, 143–44 (App.1991) (prohibi-

tion against employment as peace officer); *Copeland v. Department of Alcoholic Beverage Control,* 241 Cal.App.2d 186, 50 Cal.Rptr. 452, 453 (App.1966) (revocation of license to sell alcoholic beverages); *Ready v. Grady,* 243 Cal.App.2d 113, 52 Cal.Rptr. 303, 305–06 (App.1966) (revocation of insurance agent's license); *Meyer v. Board of Med. Exam'rs,* 34 Cal.2d 62, 206 P.2d 1085, 1088 (1949) (suspension of physician's license). These cases illustrate that "preclusion from certain types of employment is not the kind of penalty or disability which is eliminated by expungement. Such preclusion is intended for the protection of the public, not as further punishment of the convicted felon." *Adams,* 1 Cal.Rptr.2d at 143. Due to the qualified application of the "penalties and disabilities" clause of section 1203.4, the court in *Meyer* concluded:

> [I]t does not appear that it was thereby intended to obliterate the record of conviction against a defendant and purge him of the guilt inherent therein or to "wipe out absolutely" and for all purposes the dismissed proceeding as a relevant consideration and "to place the defendant in the position which he would have occupied in all respects as a citizen if no accusation or information had ever been presented against him."

206 P.2d at 1088 (citation omitted). The legislature agreed by codifying the holding in *Meyer* and extending it to dentists, psychologists, teachers, real estate dealers, dispensing opticians, and mineral-oil-gas brokers. Soven, *supra* at 137 (citations omitted).

¶ 22 Even unlicensed employment is not protected under section 1203.4. In *Taylor v. Macy,* a federal court found that a civil service employee could be dismissed for a conviction, despite its expungement. 252 F.Supp. 1021, 1023 (S.D.Cal.1966). The court stated: "[W]hile the State of California has forgiven the petitioner to the extent of releasing certain penalties and disabilities, the acts continue to exist and it would be absurd to find that the executive authorities were arbitrary and capricious in considering these expunged convictions." *Id.*

¶ 23 Other cases further limited the effect of expungement under 1203.4. *See Op-*

dyk v. California Horse Racing Bd., 34 Cal. App.4th 1826, 41 Cal.Rptr.2d 263, 265 (1995) (upholding the Racing Board's exclusion of convicted gambler from all California racetracks despite expunged conviction); People v. Wiedersperg, 44 Cal.App.3d 550, 118 Cal. Rptr. 755, 757–58 (1975) (finding that expunged conviction can be used in deportation hearing). Additionally, in a prosecution for failure to provide, an expunged conviction for such offense is definitive proof on the issue. People v. Mojado, 22 Cal.App.2d 323, 70 P.2d 1015, 1016 (1937).

¶ 24 In deciding the effects of section 1203.4, courts categorize the "penalties and disabilities" as civil or criminal. Using the categories, the courts determine which penalties and disabilities section 1203.4 releases, other than those the legislature has expressly excluded. Soven, supra at 134. The courts treat punitive sanctions as criminal and protective sanctions as civil. Id. For example, courts have excluded from release, under section 1203.4, the resulting civil penalties and disabilities associated with a convicted felon's employment opportunities. Despite the potential for economic deprivation on the convicted felon when faced with the denial of certain types of employment, California courts have consistently permitted expunged convictions to be used as a basis for such. Soven, supra at 136. The reason is public protection.

¶ 25 The same is true in Arizona. See A.R.S. § 13–904(E). Section 13–904(E) provides:

A person may be denied employment by this state or any of its agencies or political subdivisions or a person who has had his civil rights restored may be denied a license, permit or certificate to engage in an occupation by reason of the prior conviction of a felony or misdemeanor if the offense has a reasonable relationship to the functions of the employment or occupation for which the license, permit or certificate is sought.

¶ 26 Our decision here is similar to that of Epstein v. California Horse Racing Bd., 222 Cal.App.2d 831, 35 Cal.Rptr. 642 (1963). In Epstein, the court held that an expunged conviction does not prevent an administrative agency in charge of regulating a public interest activity (horse racing/gambling) from considering the conviction to determine the applicability of its rules and standards. Id. 35 Cal.Rptr. at 648. Likewise, expungement does not prevent insurance companies from requiring full disclosure when responding to factual inquiries to properly determine insurance rates or denial of coverage. We do not believe the risk of denial of insurance coverage is a protected penalty or disability within the purview of section 13–907. Preclusion of such advances public protection, not further punishment of the offender. Moreover, higher insurance rates or denial of insurance coverage does not affect a right, unlike the cases that deny certain types of employment opportunities.

 ¶ 27 We hold today that expungement does not protect a person from having to disclose the fact of conviction upon direct inquiry of such in an insurance application.[3] Importantly, the result reached here is in accord with Model Penal Code section 306.6, entitled "Order Removing Disqualifications or Disabilities; Vacation of Conviction; Effect of Order of Removal or Vacation." Section 306.6 provides in pertinent part:

(3) An order entered under Subsection (1) or (2) of this Section:

(f) does not justify a defendant in stating that he has not been convicted of a crime, unless he also calls attention to the order.

(Emphasis added.) Accordingly, when probationers are discharged and/or the court orders restoration of civil rights pursuant to A.R.S. section 13–907, notice should be given

---

3. California's statute, section 1203.4, requires the same conclusion in the employment area:

Unlike the minors' sealing statutes, which specifically authorize the offender to respond to inquiries as if the offense had not been committed, section 1203.4 provides no such authorization, and in view of the court's frequent

rulings that the conviction is not obliterated an offender would probably be expected to answer affirmatively the question whether he had been convicted of any crime. The additional statement, "but this conviction has been expunged," would be of questionable value.

Soven, supra at 140 (citations omitted).

that expungement under section 13–907 does not justify a defendant in stating that he has not been convicted of a felony, unless he also calls attention to the expungement order.

¶ 28 Royal's policy question: "Has the Proposed Insured(s) ... ever been convicted of a felony?" called for a factual response. The fact is that appellant was convicted of a felony sometime earlier. Expungement does not obliterate the fact of conviction. Therefore, appellant's response that he had never been convicted of a felony was a misrepresentation.

## C. Effect of Misrepresentation on Policy

¶ 29 Appellant next contends that his response to the prior convictions question, even if it qualifies as a misstatement, does not amount to the kind permitting rescission under A.R.S. section 20–1109. Section 20–1109 reads in relevant part:

Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

¶ 30 A showing of either actual or legal fraud can void an insurance policy. *Modern Woodmen v. Stevens,* 70 Ariz. 232, 233–34, 219 P.2d 322, 323 (1950). "The difference between legal fraud and actual fraud is one of intent. Actual fraud requires an intent to deceive while legal fraud does not." *Equitable Life Assurance Soc'y v. Anderson,* 151 Ariz. 355, 357, 727 P.2d 1066, 1068 (App. 1986). This difference was explained in *Illinois Bankers' Life Ass'n v. Theodore,* 44 Ariz. 160, 170–71, 34 P.2d 423, 427 (1934):

[I]f a question [asked in insurance application] is one where the facts are presumably within the personal knowledge of the insured, and are such that the insurer would naturally have contemplated that his answers represented the actual facts, if the representation be false, the insured is guilty of legal fraud, although as a matter of fact he may not have intended to deceive the insurer; but that where the question is of such a nature that a reasonable man would know that it represented merely the opinion of the insured, there must be an actual intent to deceive and bad faith on the part of the insured.

*Id.* Thus, the insurer must prove an intent to deceive, or actual fraud, to rescind a policy where the response is merely an expression of opinion. *Stewart v. Mutual of Omaha Ins. Co.,* 169 Ariz. 99, 103, 817 P.2d 44, 48 (App.1991) (citing *Theodore,* 44 Ariz. at 170–71, 34 P.2d at 427).

¶ 31 Appellant argues that his misrepresentation was not fraudulent because his response was not intended to deceive Royal. Whether a question elicits a factual response or an opinion may depend upon the evidence in a specific case and is generally a matter for the trier of fact to decide. *Anderson,* 151 Ariz. at 357–58, 359, 727 P.2d at 1068–69, 1070.

¶ 32 We view the facts in a light most favorable to appellant. *Faltz,* 162 Ariz. at 599, 785 P.2d at 119. Those facts indicate that appellant answered "no" to a question whether he had ever been convicted of felony after (1) receiving a court order that vacated his judgment of guilt, dismissed the charges, and restored his civil rights; and (2) being advised by his attorney that, because of that order, such a question could be answered in the negative. Section 13–907 provides that such an order releases a felon "from all penalties and disabilities resulting from the conviction," other than those imposed by two narrow exceptions which do not apply in this case. The wording of section 13–907 is ambiguous. Under these facts, we believe that genuine issues of material fact exist regarding whether appellant's response was an expression of fact, opinion, or a combination of both, and whether it amounted to actual or legal fraud.

#### D. The Breach of Contract Claim

¶ 33 Royal moved for summary judgment on the grounds that appellant's breach of contract complaint was premature, given the two year elimination period in the policy. The elimination period requires appellant to have been disabled for two years before becoming eligible for benefits. The trial court ruled as a matter of law that appellant's breach of contract claim did not accrue until March 7, 1996, the expiration date of the contractual two year elimination period. Appellant filed its breach of contract claim on June 20, 1995.

¶ 34 Appellant argues that Royal repudiated its contractual obligations by denying his claim and asserting its claim to rescind, thus committing an anticipatory breach. We review questions of law *de novo*. *Aldabbagh v. Arizona Dep't of Liquor Licenses & Control,* 162 Ariz. 415, 418, 783 P.2d 1207, 1210 (App.1989). Upon review, we agree with the trial court's ruling that, as a matter of law, appellant's breach of contract claim did not accrue until March 7, 1996. Thus, appellant filed his breach of contract claim approximately nine months premature and thus has no anticipatory breach claim against Royal.

#### E. Attorneys' Fees

¶ 35 Finally, we address both parties' requests for attorneys' fees on appeal. We have weighed and considered the relevant factors pursuant to *Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 569, 694 P.2d 1181, 1183 (1985). Accordingly, we vacate the trial court's award of attorneys' fees to Royal and decline to award attorneys' fees in this appeal.

#### IV. *CONCLUSION*

¶ 36 For the foregoing reasons, we reverse summary judgment in favor of Royal Maccabees and remand this matter for proceedings not inconsistent with this opinion.
VOSS, P.J., and NOYES, J., concur.