395 P.3d 709

**Jimmy PARSONS, Plaintiff/Appellant,**

v.

**ARIZONA DEPARTMENT OF HEALTH SERVICES, Defendant/Appellee.**

**No. 1 CA-CV 15-0851**

Court of Appeals of Arizona, Division 1.

FILED 5/2/2017

Thomas W. Dean, Esq., Phoenix, Counsel for Plaintiff/Appellant

Sherman & Howard L.L.C., Phoenix, By Gregory W. Falls, Matthew A. Hesketh, Counsel for Defendant/Appellee

Presiding Judge Randall M. Howe delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

## OPINION

HOWE, Judge:

¶ 1 This appeal is from the superior court's ruling affirming the Arizona Department of Health Services's ("DHS") order revoking Jimmy Parsons's caregiver registration card under the Arizona Medical Marijuana Act, A.R.S. §§ 36–2801 through –2810 ("AMMA"), because Parsons had committed an "excluded felony offense" in 2005, making him ineligible to be a designated caregiver. Parsons argued that because his conviction had been set aside pursuant to A.R.S. § 13–907, DHS and the superior court erred by using it as a ground for revocation. Specifically, he argued that ineligibility for a caregiver registration card is a "penalty or disability" released upon the setting aside of the conviction.

¶ 2 Whether a set-aside conviction may be considered by DHS as a ground for revoking a license pursuant to the AMMA is an issue of first impression. We hold that ineligibility for a caregiver registration card under the AMMA is not a penalty or disability under A.R.S. § 13–907 and that DHS may therefore consider the felony in determining whether to grant, deny, or revoke a caregiver registration card.

## FACTS AND PROCEDURAL HISTORY

¶ 3 In May 2005, Parsons pled guilty to one count of possession of narcotic drugs (cocaine) for sale, a class 2 felony. The superior court suspended the imposition of a sentence, placed Parsons on five years' probation, and required him to pay a fine. Parsons successfully completed the terms of his probation and paid the imposed fine. Accordingly, the court discharged him from probation in 2008.

¶ 4 After Parsons was discharged, he twice moved to have his 2005 conviction set aside under A.R.S. § 13–907, but the superior court denied the motions. Parsons tried again in February 2012. Two months later, the superior court issued an order granting Parsons's application. The order formally set aside the judgment of guilt, "dismissing the accusations or information and releasing [Parsons] from all applicable penalties and disabilities resulting from the conviction" pursuant to A.R.S. § 13–907. The court also ordered that Parsons's civil rights be restored, except his right to possess or carry a firearm.

¶ 5 Two years later, Parsons applied to DHS for a designated caregiver registration card under the AMMA. As part of his application, DHS required Parsons to attest that he had not been convicted of an excluded felony as defined in A.R.S. § 36–2801(7)—

which includes felony violations of state or federal controlled substances law—and required Parsons to mail in copies of his fingerprints. Parsons signed the attestation, representing that he had not been convicted of an excluded felony offense. The attestation form that Parsons signed included a notice that his fingerprints would be used to run a criminal background check.

¶ 6 Upon receiving Parsons's application, DHS sent Parsons's fingerprints to the Arizona Department of Public Safety to obtain his criminal history report. Generally, when DHS receives a criminal history report, it reviews the report for excluded felonies that would make a person ineligible for a caregiver card. This process can take up to several months. However, because the AMMA requires that DHS issue or deny caregiver applications within 15 days, see A.R.S. § 36–2804.03(A), DHS approved Parsons's application and issued him a caregiver registration card before completing the background check.

¶ 7 When DHS ultimately received Parsons's criminal history report, it learned of his 2005 conviction for possession of narcotic drugs for sale and the superior court's subsequent order setting the conviction aside. Upon consulting with its counsel, DHS concluded that Parsons's conviction was an excluded felony offense under the AMMA, disqualifying him from being a caregiver. Specifically, DHS concluded that setting aside a conviction does not eliminate the conviction and restores only civil rights irrelevant to the issuance of a caregiver identification card under the AMMA. Accordingly, DHS issued a notice of intent to revoke Parsons's caregiver card in September 2014. DHS alleged that Parsons had been convicted of an excluded felony offense and that Parsons knowingly violated the AMMA by falsely attesting that he had not been convicted of one.

¶ 8 Parsons requested an administrative hearing to challenge DHS's notice. At the hearing, Parsons argued that the setting aside of his conviction released him from all penalties and disabilities, including ineligibility under the AMMA. He therefore argued that he did not have an excluded felony offense and did not knowingly falsify any information in his application. After taking the matter under advisement, the administrative law judge ("ALJ") issued a decision recommending that DHS revoke Parsons's registration card. The ALJ concluded that the AMMA does not permit granting a caregiver registration card to a person who has been convicted of a controlled substance felony. The ALJ also concluded that setting aside a conviction did not change the fact that Parsons was convicted of the felony. DHS's director subsequently adopted the ALJ's recommended decision.

¶ 9 Parsons moved for a rehearing. The director denied the motion and Parsons appealed to the superior court. After oral argument, the superior court affirmed the DHS director's final order, adopting DHS's arguments and finding that sufficient evidence supported it. Parsons timely appealed.

## DISCUSSION

¶ 10 Parsons argues that the superior court erred by affirming the DHS director's final order upholding the revocation of Parsons's caregiver card.[1] The superior court's review of an agency decision is limited to whether substantial evidence supports the agency's decision and whether the decision is contrary to law, arbitrary and capricious, or an abuse of discretion. A.R.S. § 12–910(E). In reviewing the superior court's ruling affirming an agency's order, we "independently examine the record to determine whether the evidence supports the judgment," under a preponderance of the evidence standard. Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs, 202 Ariz. 555, 557 ¶ 7, 48 P.3d 505, 507 (App. 2002); Ariz. Admin. Code. ("A.A.C.") R2–19–119(A). Although we view the evidence in the light most favorable

---

1. Parsons also argues that insufficient evidence supports the conclusion that he knowingly violated the AMMA by attesting that he had not been convicted of an excluded felony because he believed that setting it aside meant that the convic- tion no longer existed. However, neither the ALJ, the Department director, nor the superior court made findings or conclusions on this issue. Therefore, we do not address this argument.

to upholding the agency's decision, we are not bound by the agency's or the superior court's legal conclusions or statutory interpretations. *JHass Grp. L.L.C. v. Ariz. Dep't of Fin. Insts.*, 238 Ariz. 377, 383 ¶ 20, 360 P.3d 1029, 1035 (App. 2015). Because ineligibility for a caregiver registration card under the AMMA is not a penalty or disability released when a conviction is set aside, Parsons's conviction is an excluded felony offense and is grounds for revocation of his caregiver registration card.

¶ 11 Parsons argues that DHS and the superior court erred by concluding that A.R.S. § 13–907 does not remove his ineligibility for caregiver registration pursuant to the AMMA. Our primary goal in interpreting a statute is to give effect to legislative intent. *JHass Grp.*, 238 Ariz. at 384 ¶ 27, 360 P.3d at 1036. In doing so, we look to the statute's plain language as the best indicator of that intent. *Azore, LLC v. Bassett*, 236 Ariz. 424, 427 ¶ 8, 341 P.3d 466, 469 (App. 2014). Further, we must construe the statute in context with other related provisions and its place in the statutory scheme. *Hosea v. City of Phx. Fire Pension Bd.*, 224 Ariz. 245, 250 ¶ 23, 229 P.3d 257, 262 (App. 2010). When the statute's language is clear and unambiguous, we must give effect to that language without employing other rules of statutory construction. *Indust. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77 ¶ 7, 219 P.3d 285, 287 (App. 2009).

■ ¶ 12 In Arizona, a person convicted of a criminal offense may apply to have the judgment of guilt set aside upon completion of the sentence and discharge. A.R.S. § 13–907(A). This is a "special benefit conferred by statute" and subject to legislative control and limitations. *State v. Hall*, 234 Ariz. 374, 377 ¶ 11, 322 P.3d 191, 194 (App. 2014). If the court grants the person's application, the court must "set aside the judgment of guilt, dismiss the accusations or information and order that the person be released from all penalties and disabilities resulting from the conviction." A.R.S. § 13–907(C). However, the statute specifically excludes from release enumerated penalties and disabilities imposed by the Arizona Department of Transportation and the Arizona Department of

Game and Fish. *Id.* The statute also clarifies that "the conviction may be used as a conviction if the conviction would be admissible had it not been set aside and may be pleaded and proved in any subsequent prosecution of such person by the state or any of its subdivisions for any offense." *Id.* Thus, setting aside a judgment does not eliminate all consequences of a person's criminal conviction under Arizona law, nor does it make the conviction a nullity. *Hall*, 234 Ariz. at 377 ¶ 11, 322 P.3d at 194.

■ ¶ 13 For example, setting aside a judgment under A.R.S. § 13–907 does not erase or remove the fact of a conviction in Arizona. *Russell v. Royal Maccabees Life Ins. Co.*, 193 Ariz. 464, 467 ¶ 15, 974 P.2d 443, 446 (App. 1998). A person whose felony conviction has been set aside under A.R.S. § 13–907 must still disclose it when asked if the person has ever been convicted of a felony. *Id.* at 470–71 ¶ 27, 974 P.2d at 449–50; *see also In re Couser*, 122 Ariz. 500, 501, 596 P.2d 26, 27 (1979) (concluding that setting aside a judgment relieves the offender from punishment that the law imposes for the crime but does not remove the fact that the offender committed the crime, meaning that the fact that the conviction was set aside cannot be used as a defense in a disciplinary proceeding); *cf.* A.R.S. § 13–907.01 (allowing a trial court to "vacate" a specific conviction, which in turn specifically allows the person convicted of it to "in all instances state that the person has never been arrested for, charged with, or convicted of the crime" in response to questions on applications). Because setting aside a conviction does not mean that the conviction ceases to exist, Parsons improperly failed to disclose the 2005 conviction in his caregiver registration application.

¶ 14 Parsons nevertheless argues that a requirement to disclose the conviction does not mean that DHS can use its existence as a reason to revoke his caregiver registration card. But DHS indeed can. The AMMA was enacted in 2010 as a voter initiative measure. *State v. Gear*, 239 Ariz. 343, 344 ¶ 2, 372 P.3d 287, 288 (2016). DHS facilitates and monitors the AMMA's administration, and is tasked with governing how it considers applications

for registry identification cards. A.R.S. §§ 36–2801(4), –2803(A)(3). Generally, the AMMA authorizes medical use of marijuana and immunizes qualified patients and designated caregivers from criminal prosecution in certain circumstances relating to the purchase and possession of marijuana. A.R.S. § 36–2811(B). A designated caregiver is a person who has agreed to assist with a qualified patient's medical use of marijuana. A.R.S. § 36–2801(5)(b). To be a designated caregiver, the person must not have been convicted of an excluded felony offense. A.R.S. § 36–2801(5)(c). As relevant here, an "excluded felony offense" includes a violation of a controlled substance law that was classified as a felony. A.R.S. § 36–2801(7)(b). An offense that would otherwise be an excluded felony offense will not make a person ineligible, however, if either of two exceptions apply: (1) the sentence or probation for that offense was completed ten or more years earlier or (2) the offense involved conduct that would be immune from arrest, prosecution or penalty under the AMMA but occurred before the AMMA's effective date. A.R.S. § 36–2801(7)(b)(i), (ii). Regulations governing the AMMA's administration require that DHS revoke a caregiver's registration card if the person has been convicted of an excluded felony offense. A.A.C. § R9–17–205(E).

¶ 15 Particularly when considering the voters' intent in enacting the AMMA, "our task is to apply the law they have written." *Reed–Kaliher v. Hoggatt*, 235 Ariz. 361, 367 ¶ 25, 332 P.3d 587, 593 (App. 2014). Here, the voters have clearly written the AMMA in a way showing their intent to require consideration of the fact of a conviction for a controlled substance related felony in determining whether an applicant is eligible for a caregiver registration card. Specifically, the voters explicitly precluded those who violated a controlled substance law from having access to what is otherwise a controlled substance within ten years of that conviction. The AMMA does not treat those convictions differently based on whether they were set aside. Indeed, recognizing convictions for controlled substance violations as exceptions to the AMMA's definition of "excluded felony offense" would read an exception into the

definition that the voters did not make. *See id.* at 368 ¶ 31, 332 P.3d at 594 ("[J]udges may [not] read exceptions into the law where none exist, thereby contravening the plain terms of the AMMA and usurping the legislative authority exercised by, and ultimately reserved for, the people.").

¶ 16 Although A.R.S. § 13–907(C)'s plain language could support Parsons's argument that ineligibility for receiving a caregiver registration card under the AMMA is a "disability," *see State v. Zaputil*, 220 Ariz. 425, 428 ¶ 12, 207 P.3d 678, 681 (App. 2008) (defining "disability" as a legal incapacity or disqualification), the set aside statute specifically qualifies that a convicted felon is only released from the penalties and disabilities "resulting from the conviction." Ineligibility for a license from a state agency is not a penalty or disability, but a measure designed to protect the public. *See id.* at 427 ¶ 13, 207 P.3d at 681 (finding that a mandate to pay restitution is not a "penalty or disability" because its purpose is to make a victim whole again); *see also Loughran v. Superior Ct. of Maricopa Cty.*, 145 Ariz. 56, 58, 699 P.2d 1287, 1289 (1985) ("The purpose of the revocation [of a driver's license] is to protect the public and not to punish the licensee."); Ariz. Op. Att'y Gen. I78–181 (concluding that "penalties and disabilities resulting from a conviction" refers only to those "which are of kindred nature to criminal proceedings" and finding that examining the qualifications of potential licensees is not for the punishment of a licensee but for the public's protection). Instead, the ineligibility under the AMMA is merely a collateral consequence of having been convicted of a felony related to controlled substance laws. As applied here, the fact that Parsons was convicted for possession of narcotics, which remains notwithstanding that the conviction was set aside, has the collateral consequence of making him ineligible to be a caregiver under the AMMA.

¶ 17 Parsons counters that this interpretation would render the enumerated exceptions to A.R.S. § 13–907(C) superfluous because no determinations of eligibility for licensing would ever be affected by A.R.S. § 13–907. However, all of the enumerated exceptions are direct punishments, not collateral conse-

quences, of certain types of criminal conduct. *See, e.g.,* A.R.S. §§ 28–3304 (mandating revocation of a driver's license upon conviction of certain vehicle-related crimes), –3306 (allowing discretionary suspension or revocation of a driver's license or requirement of traffic survival school if a licensee commits certain driving-related conduct), –3308 (requiring suspension of a driver's license if a licensee fails to appear to a traffic hearing). Thus, DHS may consider a person's prior felony conviction for a controlled substance violation as grounds to deny or revoke a caregiver's registration card, even if the conviction was set aside. Accordingly, because the record supports the finding that Parsons was convicted of possession of narcotic drugs for sale and that only six years had passed between his discharge from probation and the date of his application for a caregiver registration card under the AMMA, the superior court did not err by affirming DHS's final order.

## CONCLUSION

¶ 18 For the foregoing reasons, we affirm.