NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

TERRELL DINEYAZHE, *Petitioner/Appellee,*

*v.*

DIANA ONCO-INGYADET, *Respondent/Appellant.*

No. 1 CA-CV 21-0122 FC
FILED 12-21-2021

Appeal from the Superior Court in Maricopa County
No. FC2020-004283
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Kristi Reardon
*Counsel for Petitioner/Appellee*

Pangerl Law Firm, PLLC, Phoenix
By Regina M. Pangerl
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**G A S S**, Judge:

¶1        Mother appeals three issues: the superior court's denial of her petition to relocate her child to Connecticut, the award of long-distance parenting time, and the denial of her request for attorney fees. Mother's challenges require this court to reweigh evidence, which we cannot do. Because the superior court did not abuse its discretion, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This court views the facts in the light most favorable to sustaining the superior court's orders. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019).

¶3        Mother and father are the unmarried parents of a special needs child, E.D., born in 2014. For approximately the first six years of E.D.'s life, mother lived in Flagstaff, and father lived in Phoenix. Before mother decided to move to Connecticut, the parties successfully co-parented without judicial intervention. E.D. alternated "living with each parent, while visiting the other on a long-distance schedule."

¶4        In March 2019, mother relocated to Connecticut to work at Yale University. Because of the COVID-19 pandemic, mother returned to Arizona to work remotely. E.D. never went to Connecticut. Around this time in 2019—and before father sought court intervention—father sent mother a text message informally agreeing to E.D.'s relocation. Father later changed his mind, but he did not tell mother until July 2020.

¶5        From the end of March 2020 through July 2020, E.D. resided with mother in Show Low, after which he returned to spend most of his time in father's care. During this period in 2020, the parents disagreed about child support and parenting time. Father claimed mother intentionally kept him from having contact with E.D. Mother denied it.

¶6        In July 2020, father petitioned for paternity, legal decision-making, parenting time, and child support. Mother responded, seeking to

relocate E.D. to Connecticut. Father opposed relocation. The parties stipulated to E.D.'s parentage and joint legal decision-making. In January 2021, the superior court held an evidentiary hearing during which both parents and two other witnesses testified.

**¶7**        The superior court found relocation would not be in E.D.'s best interests and ordered E.D. to live primarily with father in Arizona. Mother received a long-distance parenting schedule. Under that schedule, mother would have in-person parenting time in Connecticut during school breaks and during her visits to Arizona. The superior court did not award either mother or father attorney fees. Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and 12-2101.A.1.

## ANALYSIS

### I.        Relocation

**¶8**        Mother challenges the denial of her petition to relocate E.D. to Connecticut. In determining whether to allow a parent to relocate with the parents' child, the superior court must consider all the relevant factors set forth in §§ 25-408.I and -403.A. Relocation must be in "the child's best interests." A.R.S. § 25-408.G. "The burden of proving what is in the child's best interests is on the parent who is seeking to relocate the child." *Id.*

**¶9**        This court reviews relocation and parenting time orders for abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). An abuse of discretion occurs when the superior court commits an error of law in drawing a discretionary conclusion or when no competent evidence supports the superior court's decision. *Id.; see also Pridgeon v. Sup. Ct.*, 134 Ariz. 177, 179 (1982) (reversal warranted only upon "a clear absence of evidence").

**¶10**        In reviewing the superior court's findings of fact, this court "examines the record to determine only whether substantial evidence exists to support" the superior court's action. *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999). This court defers to the superior court's findings of fact unless clearly erroneous. *Alvarado v. Thomson*, 240 Ariz. 12, 14, ¶ 11 (App. 2016).

**¶11**        Mother contends the superior court erred in concluding certain statutory factors under §§ 25-408 and -403 weighed in favor of E.D. remaining in Arizona. For each of the challenged factors, mother maintains the superior court's findings are contrary to the evidence, based on

unsupportable beliefs, and constitute an abuse of discretion. And, throughout, mother contends the superior court should have given greater weight to father's initial agreement to the relocation. Because this court does not reweigh evidence, we reject mother's arguments. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

## A. Father's Opposition to Relocation

**¶12** Mother first argues the superior court abused its discretion in finding father opposed the relocation in good faith. Mother asserts father's bad faith is evidenced by his "repeatedly reassur[ing] Mother that [E.D.] could relocate with her, only to back out of the agreement after Mother accepted the job and relocated." Though the superior court could have reached mother's proffered inference, the evidence also supports the superior court's contrary conclusion. *See Pouser*, 193 Ariz. at 580, ¶ 18. Mother's argument contravenes this court's deferential approach to the superior court under an abuse of discretion standard.

**¶13** During trial, father admitted he told mother she could relocate, but he explained his change of heart. During their separation in 2020—while E.D. was in Show Low—father felt "emotional" and worried mother might again restrict his contact if E.D. relocated to Connecticut. The superior court found:

> Father is not opposing the relocation in bad faith. Although he initially agreed that Mother could take [E.D.] with her he had a change of heart after realizing the consequences of this decision. While it is unfortunate that Father did not state this position initially, the court believes that Father did not change his position to mislead Mother or for any improper reason.

**¶14** The parents presented the superior court with conflicting evidence. Mother asks us to reweigh the evidence to find bad faith, but this court does not reweigh conflicting evidence. *See Hurd*, 223 Ariz. at 52, ¶ 16. Father's testimony regarding his change of heart was evidence supporting the superior court's finding he acted in good faith. *See id.* at 53, ¶ 22; *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015) (the superior court "is in the best position to judge the credibility of witnesses and resolve conflicting evidence"). The superior court did not abuse its discretion.

### B. The Prospective Advantages to the Relocating Parent and Child

¶15        Mother next asserts the superior court abused its discretion in concluding living in Arizona would provide E.D. with "stability" and moving to Connecticut "would not improve [E.D.'s] quality of life." *See* A.R.S. § 25-408.I.3. Mother presented evidence at trial—including the availability of programs offered by Yale University for children with special needs—to show relocating to Connecticut would benefit E.D.

¶16        On the other hand, Arizona is E.D.'s "home state" and E.D. has lived in Arizona since birth. Father testified about E.D.'s current living situation, relationships with nearby relatives, and special needs. Father also testified about E.D.'s school life, the child's ongoing medical services, and why remaining in Arizona would be beneficial to E.D. Father explained why he believed relocation would be "a drastic change" for E.D. The superior court found mother had legitimate professional and financial reasons to relocate, but relocation was not in E.D.'s best interests.

¶17        Again, the superior court heard conflicting evidence. Mother said E.D. would be better off relocating, while father said otherwise. Mother bore the burden of proof, and because father's testimony supported the superior court's findings on this factor, the superior court did not abuse its discretion. *See* A.R.S. § 25-408.G; *Lehn*, 246 Ariz. at 284, ¶ 20.

### C. Mother's Remaining Challenges to the Superior Court's Factual Findings on Relocation

¶18        Mother challenges three additional relocation findings. *See* A.R.S. § 25-408.I.5–7. Because each of these challenges is subject to the same evidentiary analysis as the two factual findings above, we resolve them in short order.

¶19        The superior court found relocation could not realistically allow each parent an opportunity for full parenting time. *See* A.R.S. § 25-408.I.5. Arizona is E.D.'s home state and relocating would reduce father's parenting time. Accordingly, mother bore the burden of proof to show relocating was still in E.D.'s best interests. *See* A.R.S. § 25-408.G. Both parties recognized—with mother in Connecticut and father in Arizona—a long-distance parenting schedule was inevitable for at least one parent. Mother's suggested schedule was only a couple days longer than her final award. Father's testimony supports the impracticability of full parenting time for both parents. *See supra* at ¶ 16.

¶20 The superior court also found moving would negatively affect E.D.'s emotional, physical, or developmental needs. *See* A.R.S. § 25-408.I.6. The superior court said "[a]lthough [E.D.] would likely enjoy living with Mother in [Connecticut], the lack of time with Father and other paternal relatives would ultimately be detrimental to [the child's] development. This is particularly true in light of his special needs" and the attendant prospects of changing schools and starting anew with special needs services. Though mother disagrees, father's testimony and E.D.'s conditions support this finding. *See supra* at ¶¶ 16–17.

¶21 The superior court found both parents had valid reasons for either moving or opposing the move and neither was acting to gain a financial advantage. *See* A.R.S. § 25-408.I.7. Mother disagrees, arguing father's initial agreement and subsequent opposition to relocation were self-serving and financially benefited him. No evidence suggests father's motive was financial gain. Father's "good faith" testimony supports the superior court's finding. *See supra* at ¶¶ 13–14.

¶22 Father's testimony supported all the superior court's factual findings on the relocation factors. Mother has shown no abuse of discretion by the superior court. *See Hurd*, 223 Ariz. at 52, ¶ 19 (an abuse of discretion occurs only "when the record, viewed in the light most favorable to upholding the [superior] court's decision, is devoid of competent evidence to support the decision").

### D. The Child's Best Interests

¶23 Mother argues the superior court abused its discretion in making its best-interests finding under § 25-403.A.1 regarding "the past, present, and potential future relationship between parent and child" and under .A.3 regarding "the child's adjustment to home, school, and community." She contends her close bond with E.D. would grow stronger if the child relocated with her, E.D. would adapt to the new environment, and she could keep E.D. close to their Navajo culture. After considering father's testimony, the superior court determined otherwise. Father testified E.D. was established, was going to school, and had family in Arizona. The record supports the superior court's finding changing schools, homes, and communities and relocating away from father were not in E.D.'s best interests.

¶24 Mother complains the superior court exceeded the bounds of the evidence when it stated mother would likely return to Arizona. But the superior court's best-interests findings did not turn on her potential return

to Arizona. Mother's potential to return to Arizona does not alter the superior court's ultimate weighing of whether relocation was in E.D.'s best interests. *See Pollock v. Pollock*, 181 Ariz. 275, 278 (App. 1995) (no single best-interests factor is dispositive, and all factors should be weighed collectively).

**¶25** Father's testimony supported the superior court's best-interests findings. Mother has shown no abuse of discretion.

### E. Mother's Reliance Argument

**¶26** Mother argues father agreed to her relocation through text messages, she relied on his statements, and their agreement should be enforceable. Father does not dispute his initial agreement to relocation. But even assuming father's pre-litigation agreement to allow mother to relocate constitutes a written agreement, it would not be dispositive. *See* A.R.S. § 25-408.H ("The court shall not deviate from a provision of any . . . written agreement by which the parents specifically have agreed to allow or prohibit relocation of the child *unless the court finds that the provision is no longer in the child's best interests*" (emphasis added)); *see also Murray v. Murray*, 239 Ariz. 174, 178, ¶ 17 (App. 2016) (pre-litigation agreements for parenting time must still be approved by the superior court and be in the child's best interests); *Anderson v. Anderson*, 14 Ariz. App. 195, 198 (1971) (same). And, as discussed above, the superior court did not abuse its discretion in finding relocation would not be in E.D.'s best interests. *See supra* at ¶¶ 12–25.

## II. Mother's Long-Distance Parenting Schedule

**¶27** Mother challenges the superior court's long-distance parenting plan. The long-distance parenting schedule allocates 63 days each year in Connecticut to mother, an additional 10 days during winter break on alternating years, and any available weekends during the school year she can spend in Arizona. Mother contends the award denies her substantial, frequent, and meaningful parenting time and she specifically objects to the number of days during E.D.'s winter, fall, and spring breaks. She asks us to vacate the parenting order and remand for a new schedule.

**¶28** Because both parents indicated equal parenting time is presumed in Arizona, we address the issue. This court has said "equal parenting time is presumed to be in a child's best interests." *See, e.g., Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 6 (App. 2019). But that statement does not end the analysis.

**¶29** Legal presumptions generally are tied to the burden of proof to establish the presumption, are identified as rebuttable or not, and identify what is required to rebut the presumption. *See Seiler v. Whiting*, 52 Ariz. 542, 548–49 (1938) (discussing legal presumptions). The legislature knows how to establish presumptions and impose burdens of proof and did not do so for equal parenting time—or legal-decision making for that matter. *Cf. Hart v. Hart*, 220 Ariz. 183, 187, ¶ 17 (App. 2009) (principles of statutory construction require this court to "not judicially impose a requirement the legislature has intentionally chosen not to require"). The legislature has imposed such a presumption in relocation matters, saying the parent who seeks to relocate a child bears the burden of showing relocation is in the child's best interests. *See* A.R.S. § 25-408.G; *see also* § 25-403.03.D (establishing parenting-time presumption regarding domestic violence).

**¶30** Unlike the legal presumption for relocation matters, the use of "presumed" in *Woyton* and similar cases does not suggest a parent bears a specific burden of proof to overcome presumed equal parenting time. Instead, when *Woyton* and other cases said "equal parenting time is presumed to be in a child's best interests," this court was recognizing equal parenting time operates as a starting point in the superior court's best-interests analysis. The evidence—not a presumption linked to a burden of proof—guides the court in deciding the appropriate parenting-time schedule. *See* A.R.S. § 25-103.B.1 ("It also is the declared public policy of this state and the general purpose of this title that *absent evidence to the contrary*, it is in a child's best interest . . . [t]o have substantial, frequent, meaningful and continuing parenting time with both parents." (emphasis added)).

**¶31** The words of the statute are significant and guide our interpretation. *See Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323, ¶ 11 (App. 2017) (this court first looks "to the statute's plain language as the best indicator of [legislative] intent"). If the language is clear and unambiguous, courts "must give effect to that language without employing other rules of statutory construction." *Id.*

**¶32** The statute on which the reference to a presumption relies does not reference "a presumption," instead saying "absent evidence to the contrary." *See* A.R.S. § 25-103.B. And § 25-103.B.1 does not refer to "equal parenting time," instead saying "it is in a child's best interest . . . [t]o have substantial, frequent, meaningful and continuing parenting time with both parents." Again, in contrast, a parent seeking to relocate—as mother does here—bears the burden to show relocation is in the child's best interests. *See* A.R.S. § 25-408.G. No such burden of proof applies to deviate from equal

parenting time. *See* A.R.S. § 25-103.B.1; *see also Parsons*, 242 Ariz. at 323, ¶ 11 (a statute's plain language guides its interpretation).

**¶33** Consistent with that point, Arizona's public policy statute says, absent evidence to the contrary, "it is in a child's best interest . . . [t]o have substantial, frequent, meaningful and continuing parenting time with both parents" and to have "both parents participate in decision-making about the child." A.R.S. § 25-103.B.1–2. Here, the parents share joint legal decision-making. But "[s]hared legal decision-making does not necessarily mean equal parenting time," and § 25-103.B does not require it. A.R.S. § 25-403.02; *see also Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶ 12 (App. 2020).

**¶34** Equal or near equal parenting time is often impossible in long-distance parenting. *See Gutierrez v. Fox,* 242 Ariz. 259, 271, ¶ 47 (App. 2017). The relocation statute contemplates this reality by qualifying the continuation of a meaningful relationship between the child and both parents with the phrase "[t]o the extent practicable." *See* A.R.S. § 25-408.G. With long-distance parenting, "one of the parties will be burdened regardless of which state the [superior court] selects" as the child's primary residential location. *Gutierrez,* 242 Ariz. at 271, ¶ 47.

**¶35** The superior court "has discretion to determine parenting time based on all the evidence before it" and should maximize parenting time only to the extent it is in the child's best interests. *Gonzalez-Gunter*, 249 Ariz. at 492, ¶¶ 11–12. This schedule does, to the extent practicable, ensure mother continues to have a meaningful relationship with E.D. We also note the superior court made a downward deviation in mother's child support obligation from $645 to $350 a month to help encourage mother to visit E.D. and make travelling more affordable. After review, the superior court did not abuse its discretion when it ordered the long-distance parenting schedule.

## III.    Attorney Fees in the Superior Court

**¶36** Finally, mother argues the superior court erred in denying her request for attorney fees under § 25-324 because father was unreasonable. Again, she bases this argument on father's agreement to allow E.D. to relocate.

**¶37** The superior court may award attorney fees after consideration of the financial resources and the reasonableness of the parties' legal positions. A.R.S. § 25-324. Here, the superior court found no substantial disparity in financial resources between the parents and found

neither mother nor father acted unreasonably. An award of attorney fees under § 25-324.A is discretionary. *Magee v. Magee*, 206 Ariz. 589, 593, ¶ 18 (App. 2004). After review, the superior court's decision not to award either party attorney fees did not constitute an abuse of discretion. *See Lehn*, 246 Ariz. at 286, ¶ 29.

## ATTORNEY FEES ON APPEAL

**¶38** Both mother and father request attorney fees on appeal under § 25-324. Neither party took unreasonable positions in this appeal. After considering the relevant factors, we decline to award either party attorney fees. As the successful party, we award father his costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

## CONCLUSION

**¶39** We affirm the superior court's orders.



AMY M. WOOD • Clerk of the Court
FILED: AA